IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0543** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| WARDEN TROY WILLIAMSON, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

The Petitioner, Kenneth Raymond McKettrick, an inmate at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, filed, *pro se,* this Petition for Writ of Habeas Corpus[1] pursuant to 28 U.S.C. § 2241, on March 15, 2006. **(Doc. 1)**. Petitioner names as Respondent an individual employed by the Federal Bureau of Prisons ("BOP") at USP-Lewisburg, namely Warden Williamson. Plaintiff paid the filing fee in full. We give preliminary consideration to McKettrick's Habeas Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)). *See Patton*

---

[1] Recently, McKettrick filed a civil rights case pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). *See McKettrick v. Williamson*, 06-0329, M.D. Pa. In his *Bivens* action, McKettrick essentially raises the same claims as he does in this habeas petition, *i.e.* his placement in the SMU at USP-Lewisburg without any notice and without a hearing, and without any BOP standards or criteria violated his due process rights. We have issued a separate Report and Recommendation regarding McKettrick's *Bivens* action.

*v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979).[2]

## II. Claims of Habeas Petition.

Petitioner does not challenge the legality of his prison confinement, nor does he challenge the duration of his confinement. He does not claim that his judgment of conviction was invalid or that he is being confined in prison unlawfully. He does not seek release from prison, nor does he seek to be released sooner from prison. Rather, Petitioner claims that his placement and continued confinement in the SMU at USP-Lewisburg, without any notice and hearing, and without any BOP policy, standards or criteria, violates his due process rights. Petitioner does not specify the relief he seeks, but based on Petitioner's prior *Bivens* case, it is presumed to be released from placement in the SMU program and to be returned to the general population at the prison. Significantly, Petitioner does not seek relief that would shorten the length of this current sentence and incarceration in prison. Nor does Petitioner seek release from prison by attacking the legality of his judgment of conviction.

Petitioner states that he is challenging the lack of a BOP SMU policy, and he claims that this violates his Constitutional rights, *i.e.* there is no approved BOP standard or criteria governing an inmate's placement into the SMU program. (Doc. 1, p. 4). Petitioner also claims that his placement into the SMU program constitutes an atypical and significant hardship, and implicates a liberty interest. As such, Petitioner claims that his placement into the SMU program without any notice and without a hearing violated his due process rights. Plaintiff seemingly claims that the named

---

[2]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

Respondent, Warden Williamson, violated his due process rights by permitting his placement into the SMU program at the prison without any criteria for said confinement.[3]

Plaintiff indicates that he challenges BOP's policy regarding the placement of inmates in the SMU program since it violates his Constitutional rights because it lacks any approved standard or criteria, and since he was denied a hearing prior to being classified and placed into the SMU program. (*Id*.).

This case is construed as a Fifth Amendment due process claim of SMU confinement. It is not a case in which core habeas claims are raised. Rather, it is a *Bivens* case that is basically duplicative of McKettrick's previously filed *Bivens* action. Thus, we shall recommend that this case be construed as a *Bivens* suit, and, to the extent that McKettrick has claimed that he has been placed in the SMU program as retaliation due to his race and his grievances which he filed, that it be consolidated with McKettricks' prior *Bivens* action currently pending before this Court. *See McKettrick v. Williamson*, 06-0329, M.D. Pa. To the extent that the instant case claims a violation of due process, it should be dismissed for failure to state a claim.

In the present case, as stated, McKettrick claims that he was denied his due process rights with respect to his SMU program placement since he was denied notice as to the reason for his placement in this program, that he was denied the opportunity to present mitigating evidence opposing his classification in this program, and that he was not given a hearing and allowed to

---

[3]Based on McKettrick's pleading filed in his referenced *Bivens* action, we note that he has averred that his placement into the SMU program at USP-Lewisburg occurred on or about January 20, 2006, and that to date he is still placed in the SMU program.

appeal his placement in the SMU program. (Doc. 1, p. 4). McKettrick's claims of no notice and hearing prior to his SMU program placement sound as a civil rights action under *Bivens*, as opposed to a § 2241 habeas petition. In fact, as stated, McKettrick makes no specific request for relief in his filing. Thus, McKettrick is deemed as only challenging his conditions of confinement at USP-Lewisburg regarding his lack of notice and hearing, and thus his action is a *Bivens* action. McKettrick is not seeking relief that would affect the length of his confinement, nor is he challenging the legality of his incarceration in prison. Accordingly, his action should not be a habeas petition. As stated, McKettrick makes no request for relief in this case challenging the duration of his confinement.

McKettrick's due process claims are thus properly raised as a § 1331 *Bivens* action. In fact, as mentioned McKettrick has already filed a *Bivens* action raising the same due process claims as he now raises in his Habeas Petition. His claims do not fall within the core of habeas corpus because there is no relief request seeking release from confinement in prison, and there is no request that would necessarily imply that McKettrick's incarceration will be shortened if he succeeds in his present action.[4]

---

[4] In the case of *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002), the Court held that when an inmate is challenging issues which affect the length of sentence, a habeas corpus petition and not a civil rights action is the exclusive federal remedy.

The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the duration or length of his custody in prison. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S.Ct. 1827 (1973). McKettrick, in the present case, does not attack the duration of his incarceration and does not seek an earlier release from prison. Rather, he only challenges the lack of procedures regarding his placement in the SMU program, *i.e.* without notice and without a hearing. He has not requested relief that would alter the term of his confinement. Therefore, McKettrick's action is a civil rights suit, and not a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241. *See Muhammad v. Close*, ___ U.S. ___, 124 S.Ct. 1303, 1304 (2004) (Per Curiam) (civil rights action not *Heck* barred where inmate did not seek to expunge misconduct

McKettrick's instant claims regarding the legality of his SMU program placement are claims regarding the conditions of his confinement at USP-Lewisburg, and do not relate to a speedier release from confinement and are not at the core of a habeas petition. As such, McKettrick's stated habeas claims are cognizable as *Bivens* claims under 28 U.S.C. § 1331. *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005); *Carson v. Johnson*, 112 F. 3d 818, 820-821 (5th Cir. 1997) ("If a favorable determination ... would not automatically entitle [Petitioner] to accelerated release, the proper vehicle is a § 1983 [civil rights] suit.") (citations omitted).

Here, as stated, McKettrick makes no claim for restoration of lost good conduct time credits, and he does not implicate the duration of his confinement. Rather, he only challenges the legality of his SMU placement by claiming that he was not given notice, he was not allowed to present evidence, and that the BOP did not conduct a hearing as required by due process.

In reviewing the instant filing, we have determined that McKettrick's due process claim regarding his SMU placement without any criteria and without due process has been found as not implicating a liberty interest by this Court. Thus, we find that McKettrick's action is indeed a *Bivens* action, based on the face of his pleading, and that it fails to state a Fifth Amendment claim. Thus, we shall recommend that to the extent McKettrick's attempts to raise a due process claim, it should be dismissed. Further, since we found in McKettrick's prior *Bivens* action that, with respect to his

---

charge since it could not be construed as seeking a judgment at odds with inmate's conviction or calculation of time to be served on underlying sentence).
    A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the vehicle for a federal inmate incarcerated under a federal judgment of sentence to challenge the duration of his custody. Conversely, the general remedy for prisoners challenging their conditions of confinement, as McKettrick is doing here, is through the filing of a civil rights action. *Preiser, supra.; Muhammad, supra.*

retaliatory SMU transfer claim, *i.e.* retaliatory transfer to the SMU due to his race and grievances, McKettrick should be permitted to amend his pleading for this claim to raise it against the responsible prison staff members, we shall recommend that the present case be consolidated with the 06-0329 case of McKettrick.

### III.  Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

### IV. *Bivens.*

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to

apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

**V. Discussion.**

As discussed above, McKettrick is challenging his placement into the SMU program. He challenges BOP's policy as being without any standard or criteria. We construe this claim as a *Bivens* claim and not as a habeas claim.

*1. Fifth Amendment Due Process Claim*

As discussed, McKettrick alleges that as a result of the application of an illegal prison policy, he was placed in the SMU program at the prison. In his prior *Bivens* action, McKettrick alleged that on January 20, 2006, he was transferred to the SMU program. He also stated that he was transferred to the SMU based on retaliation premised on his race and the grievances he filed.

In our prior Report and Recommendation, we recommended that McKettrick be permitted to amend his *Bivens* pleading to state the personal involvement of the prison staff implicated in the alleged retaliatory transfer by Plaintiff. Plaintiff did not allege that the named Defendants in his prior case retaliated against him due to his race and his grievances by placing him into the SMU program. (Doc. 1, Att. A & Att. B, pp. 1-2, ¶ 2., # 06-0329). We also recommend that McKettrick's due process claim be dismissed for failure to state a claim.

As in our prior Report and Recommendation regarding McKettrick's *Bivens* action,

7

McKettrick, in the instant case, has not alleged that he had a "protected liberty interest" that was infringed by Williamson's actions. "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." *Griffin v. Vaughan*, 112 F.3d 703, 706 (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

McKettrick avers that the BOP's SMU placement policy caused him atypical and significant hardship, presumably by depriving him of his general population status, without any approved standard or criteria and without any notice or hearing. Thus, he claims that his due process rights were violated.

In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest. In our prior Report and Recommendation, we stated that based on *Sandin* and *Griffin,* McKettrick's *Bivens* Complaint as against Defendant Williamson failed to state a claim, since his forty-eight (48) (as of March 9, 2006) days SMU detention did not give rise to a protected liberty interest. Further, we stated that no liberty interest is implicated by McKettrick because he had no right to a particular prison classification, *i.e.* general population classification. It is well-settled that an inmate has no recognizable constitutional right to a particular custody status. *See Wilson v. Horn*, 971 F. Supp. 943,

947 (E.D. Pa. 1997).

We also found that McKettrick was requesting relief in the form of Court intervention and management while he is in prison, *i.e.* a change in his custody status level and/or security housing level in the prison by transferring him out of the SMU program and back into the general population. We stated that the Court will not generally interfere with prison administration matters such as the prison's decision to place an inmate in a particular security level. We indicated that the Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002).

Moreover, we stated that based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D. Pa.), and *Stotts v. Dodrill*, Civ. No. 04-0043, M.D. Pa.,[5] we found that McKettrick's placement in the SMU did not implicate his due process rights. As this Court in *Francis* stated:

> The defendants also argue that Francis' placement in the
> SMU does not implicate his due process rights. We agree. A due
> process liberty interest "in avoiding particular conditions of confinement
> may arise from state policies or regulations." *Wilkinson v. Austin,*
> ___ U.S. ___, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).
> The Due Process Clause protects a prisoner's right to "freedom
> from restraint, which, while not exceeding the sentence in such
> an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and
> significant hardship in relation to the ordinary incidents of prison
> life." *Id.* at 2394 (quoting *Sandin v. Connor*, 515 U.S. 472, 484,
> 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).
>
> The proper focus for determining whether prison conditions give

---

[5] In *Stotts*, this Court found that federal inmates' placement in the SMU following a riot incident did not violate their due process rights, that inmates' placement in the SMU was not punitive in nature, and that inmates were not entitled to the procedural safeguards.

rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. *Sandin*, 515 U.S. at 484. In *Sandin*, an inmate was charged with violating prison regulations. *Id*. at 475. At a hearing, the hearing committee refused the inmate's request to present witnesses. *Id*. The committee found the inmate guilty and sentenced him to disciplinary segregation. *Id*. The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. *Id*. at 476. Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. *Id*. The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. *Id*. at 477. The Supreme Court reversed, finding no liberty interest. *Id*. at 484. In doing so, it rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Id*. at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id*. at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. In applying this test, the Court observed, "[discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic conditions of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody. *Id*. at 486.

> In *Wilkinson v. Austin*, ___ U.S. ___, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005), the Court applied the *Sandin* test and found that the plaintiff's due process rights were implicated when he was placed in a program where:
> almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room ... [P]lacement ... is indefinite and, after an initial 30 day review, is reviewed just annually . . . . [P]lacement disqualifies an otherwise eligible inmate for parole consideration.
>
> *Id*. at 2394-95.
>
> The court found that these harsh conditions "give rise to a liberty interest in their avoidance."
>
> *Id*. at 2395.
>
> *Fraise v. Terhune*, 283 F.2d 506 (3d Cir.2002) applied the *Sandin* test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest. Inmates who the prison deemed members of groups that posed a security threat were placed in the STGMU. *Id*. at 509. "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program." *Id*. at 511. The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. *Id.; see also Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).
>
> We find that the conditions in the [USP-Lewisburg] SMU do not remotely approach the severity of the conditions *Wilkinson* found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as *Sandin, Fraise,* and *Griffin*, which found no protected liberty interest.

*Id*., pp. *3-*4.

11

The *Francis* Court concluded that the restrictions in the SMU in federal prison at USP-Lewisburg were no greater than the restrictions placed on the inmate in *Griffin*. *Id.* * 5. We stated in our prior Report and Recommendation that McKettrick did not allege any greater restrictions in the SMU at USP-Lewisburg than were placed on the inmates in *Francis*, who were also in the very same SMU program at USP-Lewisburg.

The *Francis* Court then stated:

> Inmates have no due process right to a facility of their choosing. *Young v. Quinlan*, 960 F.2d 351, 358 n. 16 (3d Cir. 1992). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. Inmates do, however, have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This is not such a transfer. We find that these conditions and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law. While Francis clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause.

*Id.*

Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

12

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id*. at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id*.

We previously indicated that this Court in *Francis, supra at * 2,* stated that "A violation of the Due Process Clause involves the following three elements: '1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.'" (citation omitted). The *Francis* Court, as stated, found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id*. * 3. Based on *Griffin* and *Francis*, we found that McKettrick's placement in the SMU for about forty-eight (48) days (*i.e.* January 20, 2006 to March 9, 2006) (now about 59 days) does not give rise to a protected liberty interest.

In *Thorpe v. Dohman*, 2004 WL 2397399 * 2 (E.D. Pa.), the Court considered whether Plaintiff inmate's placement in the SCI-Graterford RHU on administrative custody status for 15 days without receiving a hearing violated due process. The Court stated that its Plaintiff was entitled to a hearing if he had a liberty interest in remaining in the prison's general population. The *Thorpe* Court found that, based in part on *Griffin, supra*, the 15-day delay in giving plaintiff an administrative hearing did not violate due process. *Id*. * 3. The *Thorpe* Court then cited *Whittington v. Vaughn*, 289 F. Supp. 2d 621, 626 (E. D. Pa. 2003), and quoted it as follows: "The courts of this circuit have

repeatedly held that temporary transfer to SCI Graterford's RHU, whether for administrative or disciplinary reasons, does not impose [atypical and significant] hardship."

Therefore, we found that none of McKettrick's due process rights were violated by the BOP or the Warden. We stated that this conclusion was supported by several additional cases dealing with state inmates, including the following cases.

In *Fraise v. Terhune*, 283 F. 3d 506, 522 (3d Cir. 2002), the Court held that the DOC did not violate the due process rights of state inmates who were transferred to the prison Security Threat Group Management Unit (SGTMU) without notice since inmates were not deprived of a protected liberty interest. The *Fraise* Court concluded that:

> Here, the plaintiffs were not subjected to confinement that
> exceeded the sentences imposed upon them or that otherwise
> violated the Constitution, and therefore no liberty interest created by
> the Due Process Clause itself was impinged. *See Hewitt*, 459 U.S. at
> 468, 103 S.Ct. 864 (It is plain that the transfer of an inmate to
> less amenable and more restrictive quarters for nonpunitive reasons
> is well within the terms of confinement ordinarily contemplated
> by a prison sentence.).

*Id*.

The *Fraise* Court found that the inmates could not show that they were deprived of a state-created liberty interest. The Court went on to state:

> Although inmates who are transferred to the STGMU face additional
> restrictions, we hold that the transfer to the STGMU does not impose
> an atypical and significant hardship in relation to the ordinary incidents of
> prison life. *See Griffin,* 112 F.3d at 706-08 (15 months in administrative
> segregation not atypical and significant hardship); *see also, e.g.,*
> *Jones v. Baker,* 155 F.3d 810, 813 (6th Cir.1998) (confinement
> in administrative segregation for two and one-half years is not
> atypical and significant hardship); *Pichardo v. Kinker,* 73 F.3d 612,
> 613 (5th Cir.1996)(rejecting as frivolous a claim that classification

14

> as gang member and placement in administrative segregation unit
> deprived inmate of a protected liberty interest). Thus, the plaintiffs
> lack a protected liberty interest and their due process claim must fail.

*Id.* 522-23.

In *Bey v. PA DOC*, 98 F. Supp. 2d 650, 661, n. 25 (E.D. Pa. 2000), the Court noted that:

> plaintiff's ten-month confinement in administrative custody at
> [SCI] Greene does not represent such an "atypical and significant
> hardship on [plaintiff] in relation to the ordinary incidents of
> prison life" so as to trigger due process protection. *See, e.g. Griffin
> v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (citing *Sandin v. Conner,*
> 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995),
> and finding that plaintiff's fifteen-month confinement in
> administrative custody did not deprive plaintiff of any "state created
> liberty interest, and that the failure to give [plaintiff] an administrative
> hearing prior to his transfer to administrative custody was not a
> violation of the procedural due process guaranteed by
> the United States Constitution"); *Wilson v. Horn,* 971 F.Supp. 943,
> 947 (E.D.Pa.1997) (stating that inmate "has no federal
> constitutional right to a particular custody status); *Smith v. Luciani,*
> Nos. CIV.A. 97-3037 and 97-3613, 1998 WL 151803, at (E.D.Pa.
> Mar. 31, 1998) (Prisoners, however, have no constitutional right to
> a hearing before a term of seven months administrative custody is
> imposed, because it is not atypical of the types of deprivations
> expected while in prison) (citing *Griffin* ).

Based on the foregoing and the well-settled case law, as we found in our prior Report and Recommendation, we again find that McKettrick's action fails to state a due process claim. We also find that to the extent that McKettrick is again alleging that his transfer to the SMU program was retaliatory based on his race and the grievances he filed, that this claim should be consolidated with McKettrick's case # 06-0329. Thus, we shall recommend that this case be construed as a *Bivens* civil rights action, and that the due process claim be dismissed.

**VI. Recommendation.**

Based on the foregoing, it is respectfully recommended that McKettrick's Habeas Corpus Petition be construed as a *Bivens* civil rights action, and that insofar as it raises a due process claim, it be dismissed for failure to state a claim.[6]  It is also recommended that the present case, to the extent that McKettrick has raised a First Amendment retaliation claim, be consolidated with his previous case, # 06-0329.


                                    **s/ Thomas M. Blewitt**
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**

**Dated: March 22, 2006**

---

[6]As we noted in our Report and Recommendation in case # 06-0329, notwithstanding McKettrick's *pro se* status, we do not recommend that he be permitted to amend his Complaint regarding his due process claim since we find that based on well-settled case law his due process claim  fails to state a constitutional violation. Thus, we again find futility of any amendment of this claim, and we shall not recommend Plaintiff be granted leave to amend his due process claim.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0543** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| WARDEN TROY WILLIAMSON, | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 22, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                               **s/ Thomas M. Blewitt**
                                                               **THOMAS M. BLEWITT**
                                                               **United States Magistrate Judge**

**Dated: March 22, 2006**